UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

RM MEDIA LTD.,

    Plaintiff,

v.

ERIC TRAN, *et al.*,

    Defendants.

Case No.: SACV 18-01508-CJC-JDE

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [Dkt. 28]**

## I. INTRODUCTION & BACKGROUND

On August 24, 2018, Plaintiff RM Media Ltd. ("RM") filed this copyright infringement action against Defendants Eric Tran, Sergio Savic, and Universal Commercial Capital ("UCC"). (Dkt. 1 [Complaint, hereinafter "Compl."].) Plaintiff RM

is a media company specializing in commercial and stock photography licensing. (*Id.* ¶ 5.) Defendant UCC is a real estate mortgage lending company incorporated in Nevada, with its principal place of business in Huntington Beach, California. (*Id.* ¶ 6.) Defendant Eric Tran, UCC's Chief Operating Officer and President, resides in California. (*Id.* ¶ 8.) Defendant Sergio Savic allegedly is, or at least was, a web developer for UCC's website. (*Id.* ¶ 10.)

According to Plaintiff, Defendants used two copyrighted images from Plaintiff's website, without permission, on UCC's website. (*Id.* ¶ 22.) The first is an image of a typewriter with a piece of paper bearing the words "Commercial Property For Sale." (*See* Compl. Ex. D.) The second is an image of a clipboard holding a piece of paper with the word "Mortgage" in typed font. (*See id.*) Plaintiff RM is the assignee and sole rights holder to both images. (Compl. ¶ 14.) The images are registered with the U.S. Copyright Office as VAu 1-301-124 and VAu 1-248-878, respectively. (*Id.* ¶ 15.)

Plaintiff provides two licensing options for consumers seeking to use its content. Under the first, a consumer can pay a licensing fee in exchange for use rights. Under the second, Plaintiff offers a limited portion of its content, including the images at issue here, under a "Creative Commons Attribution – ShareAlike license." (*Id.* ¶ 18.) This second option requires that the consumer "give appropriate credit, provide a link to the license, and indicate if changes were made" to the image(s). (Compl. Ex. E [ShareAlike License].) Plaintiff's website contains a detailed explanation of the terms of the Creative Commons license with the disclaimer that using its images without following those terms "may lead to an action for copyright infringement." (Compl. ¶ 21.)

Between May and June 2018, Plaintiff discovered that Defendants were using the two images described above on UCC's website. However, Defendants had failed to avail themselves of either of Plaintiff's licensing options before doing so. (*Id.* ¶ 22.)

1  Accordingly, Plaintiff's counsel repeatedly requested that Defendants remove the images.
2  On May 18, 2018, Plaintiff's counsel sent a cease and desist letter to UCC's place of
3  business, informing Defendants that they do not possess a valid license and requesting the
4  images' removal.  (*Id*. ¶ 25.)  Plaintiff's counsel followed up by telephone and email in
5  an effort to discuss the letter but did not receive a response.  When Plaintiff's counsel
6  again attempted contact in June 2018, Defendant Tran responded that Defendants
7  obtained the images through Google Images and had assumed they had the right to use
8  them.  (*Id*. ¶ 27.)  Later that month, Defendant Savic stated over the phone that Plaintiff
9  could have no claim against Defendants because UCC was "shutting down."  (*Id*. ¶ 28.)

After several other unsuccessful attempts at resolving the matter without litigation, Plaintiff RM brought the instant action alleging claims for (1) copyright infringement in violation of 17 U.S.C. §§ 101 *et seq*., and (2) falsification, removal, and alteration of copyright management information in violation of 17 U.S.C. § 1202.  (*See generally* Compl.)  As relief, RM seeks (1) a permanent injunction restricting Defendants from infringing Plaintiff's copyrights pursuant to 17 U.S.C. § 502, and (2) an award of statutory damages pursuant to 17 U.S.C. §§ 504, 1203(c)(3)(B), and (3) attorneys' fees and costs.  (*Id*. at 11.)  Before the Court is Plaintiff's motion for default judgment against Defendants Eric Tran and UCC.  (Dkt. 28 [hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[1]

//

---

[1] Having read and considered Plaintiff's motion, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 7, 2019, at 1:30 p.m. is hereby vacated and off calendar.

# III. ANALYSIS

## A. Procedural Requirements

In considering whether to enter default judgment against Defendants, the Court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court has subject matter jurisdiction over violations of the Copyright Act pursuant to 28 U.S.C. § 1338(a). Because UCC's principal place of business is in Huntington Beach, California, and Eric Tran resides in California, the Court also has personal jurisdiction over Defendants.

Under Federal Rule of Civil Procedure 55(b)(2) and this Court's Local Rule 55-1, Plaintiff's application for default must set forth "(1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, Plaintiff has set forth the required information: (1) the Court entered default against Defendants UCC and Eric Tran on October 5, 2018 and October 19, 2018, respectively, (Dkts. 22, 26), (2) the default was entered as to the Complaint, (*id.*), (3) neither Defendant is an infant or incompetent person, (Dkt. 28 [Declaration of Saba A. Basria] ¶ 17), (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply, (*id.* ¶ 18), and (5) the notice requirements of Rule 55(b)(2) do not apply because Defendants have not appeared in this action despite being served with Plaintiff's Complaint and application, (*id.* ¶ 19). Accordingly, the procedural requirements for default are satisfied.

**B.     Merits of the Motion for Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. Fed. R. Civ. P. 55(a)–(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors articulated in *Eitel v. McCool* in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471–72 (9th Cir. 1986). Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, the *Eitel* factors weigh in favor of entering default judgment against Defendants.

**1.    Possibility of Prejudice to Plaintiff**

If the motion for default judgment is not granted, Plaintiff RM "would be denied the right to judicial resolution of the claims presented." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). By choosing to default rather than defend, Defendants are "deemed to have admitted the truth of Plaintiff's averments," *Philip Morris*, 219 F.R.D. at 499, thereby establishing their liability. Absent the entry of default judgment against Defendants, Plaintiff would have no other recourse for relief.

//

**2. & 3. The Merits of the Claim and the Sufficiency of the Complaint**

The second and third *Eitel* factors, taken together, "require that the plaintiff state a claim on which he may recover." *Phillip Morris*, 219 F.R.D. at 499. Plaintiff brings two claims: one for copyright infringement and another for falsification and removal of copyright management information. To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel Serv. Co.*, 499 U.S. 340, 361 (1991). To satisfy the second element, a plaintiff must allege "the infringer had access to plaintiff's copyright work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

Plaintiff has stated a claim for copyright infringement. The Complaint alleges that Plaintiff owns two valid copyrights to the two images Defendants used on UCC's website. (Compl. ¶¶ 14–15.) Those images were timely registered with the U.S. Copyright Office, bearing registration numbers VAu 1-301-124 and VAu 1-248-878. (*Id.*) According to Plaintiff and as corroborated by the pictures attached to its Complaint, Defendants are using identical copies of Plaintiff's images on UCC's website. (*See* Compl. Exs. D, DD.) "Absent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423–24 (9th Cir. 1987).

Plaintiff has also stated a claim for falsification, removal, and alteration of copyright management information. To bring a claim for falsification, Plaintiff must allege that Defendants "knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provided "copyright management information" that is false, or distributed or imported for distribution copyright management information that is false.

17 U.S.C. § 1202(a).  To bring a claim for removal or alteration, Plaintiff must allege that Defendants intentionally removed, altered, or distributed "copyright management information."  *Id*. § 1202(b).  Copyright management information, in turn, is defined as information "conveyed in connection with copies" of a work, including "[t]he name of, and other identifying information about, the author of a work" or "the copyright owner of the work."  *Id*. § 1202(c).  Here, Plaintiff alleges that the source of the two images specifically provided attribution to Plaintiff, and that Defendants failed to include that attribution when they published the images on UCC's website.  (Compl. ¶¶ 42–43.)  Plaintiff has stated claims for both copyright infringement and falsification, alteration, and removal of copyright management information.

### 4. The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to consider the amount of money at stake.  *Eitel*, 782 F.2d at 1471–72.  Here, Plaintiff seeks a sum of $20,831.12, which consists of (1) $7,500 in statutory damages for copyright infringement, (2) $10,000 in statutory damages for falsification, alteration, and removal of copyright management information, (3) $2,687.50 in attorneys' fees, and (4) $643.62 in costs.  (Mot. at 2.)

For each infringed work, the Copyright Act permits the copyright owner to recover statutory damages in an amount between $750 and $30,000.  17 U.S.C. § 504(c)(1).  Under its copyright infringement claim, Plaintiff seeks $3,750 for each infringed work, totaling $7,500.  For each violation of section 1202's prohibition of the falsification, alteration, and removal of copyright management information, section 1203(c)(3) provides for statutory damages ranging from $2,500 to $25,000.  Under its second claim, Plaintiff seeks $5,000 per violation, for a total of $10,000.  The Copyright Act also provides for reasonable attorneys' fees and costs to the prevailing party.  17 U.S.C. § 505.  In light of Defendants' continued unlawful conduct even after Plaintiff informed them of

their infringement of Plaintiff's valid copyrights, the Court finds that the amount of money at stake is reasonable, subject to the discussion below.

### 5. & 6. The Possibility of a Dispute Concerning Material Facts and Whether the Default Was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendants' failure to litigate is due to excusable neglect. The possibility of a dispute concerning material facts is unlikely. The photographs submitted with the Complaint show that Defendants used identical copies of Plaintiff's copyrighted images. The screenshots taken of Defendants' website show how these images were used to promote UCC's business. Further, there is no indication that Defendants' default was due to excusable neglect, as Plaintiff served Defendants with notice of both the Complaint and the motion for default judgment.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment. Nevertheless, Defendants' choice not to defend themselves renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177. Since the other *Eitel* factors all weigh in favor of granting default judgment, the Court will exercise its discretion to grant Plaintiff's motion for default judgment.

**D. Relief Sought**

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiff carries the burden of showing it is

entitled to the requested relief. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Plaintiff first seeks injunctive relief under the Copyright Act restricting Defendants and its agents, employees, and successors from infringing on Plaintiff's copyrights. *See* 17 U.S.C. § 502 ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). In actions for copyright infringement, courts routinely issue injunctions as part of a default judgment against the infringing party. *See, e.g.*, *Sony Music Entm't Inc. v. Elias*, 2004 WL 141959, at *4 (C.D. Cal. Jan. 20, 2004); *Essex Music, Inc. v. Sonora Claremont, Inc.*, 2009 WL 10672986, at *3 (C.D. Cal. Jan. 27, 2009). Here, Plaintiff alleges that Defendant's conduct is causing irreparable injury that cannot be fully compensated by or measured in money. (Mot. at 8.) As already noted, Plaintiff has shown it is likely to succeed on the merits and that despite Plaintiff's warnings, Defendants continue to use its images without permission or proper licensing. Accordingly, Plaintiff is entitled to injunctive relief enjoining Defendants Eric Tran and UCC from infringing on Plaintiff's exclusive copyrights to the two images registered with the U.S. Copyright Office as VAu 1-301-124 and VAu 1-248-878.

Plaintiff next seeks statutory damages for both of its claims. For its copyright infringement claim, Plaintiff seeks a total of $7,500 in statutory damages pursuant to 17 U.S.C. § 504(c)(1). A "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000, as the court considers just." *See* 17 U.S.C. § 504(c)(1). Where the infringement is willful, the award may be increased to $150,000. *Id*. § 504(c)(2). A plaintiff may recover these statutory damages "whether or not there is adequate evidence

of the actual damages suffered by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement." *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998); *see also Columbia Pictures Television, Inc. v. Krypton Broad of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001). Here, Plaintiff alleges that Defendants willfully violated Plaintiff's copyrights by continuing to use the two images after Plaintiff's counsel issued a cease and desist letter. Plaintiff is entitled to $7,500 in statutory damages under its copyright infringement claim.

Plaintiff seeks a total of $10,000 in statutory damages under its second claim for falsification, alteration, and removal of copyright management information. A party bringing a claim for falsification, alteration, or removal of copyright management information "may elect to recover an award of statutory damages for each violation . . . in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3). Although Plaintiffs' requested statutory damages are four times the mandatory minimum, the Court finds the amount reasonable in light of Defendants' continued and deliberate violation of the copyright laws. Plaintiff is entitled to its requested statutory damages in the amount of $10,000 under its claim for falsification, alteration, and removal of copyright management information.

Finally, Plaintiff seeks $2,687.50 in attorneys' fees and $643.62 in costs. In an action arising under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States" and "may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Plaintiff has failed to substantiate his request for attorneys' fees with anything other than his own declaration stating he has "spent approximately 8 hours prosecuting this matter" and "anticipates spending an additional 2 hours preparing for and attending the hearing on this Motion." (Basria Decl. ¶ 26.) Accordingly, the Court will instead calculate Plaintiff's counsel's fee

award pursuant to Local Rule 55-3, which specifically governs attorneys' fee awards in the context of default judgments. For a judgment between $10,000.01 and $50,000, the attorneys' fee award is $1,200 plus 6% of the amount over $10,000. L.R. 55-3. Here, Plaintiff's total damage award is $17,500. Accordingly, Plaintiff's counsel is entitled to a fee award of $1,650. Plaintiff is also entitled to its "full costs" in the amount of $643.62.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED**. The Court awards Plaintiff $17,500 in statutory damages, $1,650 in attorneys' fees, and $643.62 in costs. A judgment consistent with this Order will be issued concurrently herewith.

DATED: December 18, 2018

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE